UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

| | |
|---|---|
| HENRY DALE KIRBY,              )<br>                                                 )<br>                       Petitioner,  )<br>                                                 )<br>v.                                             )<br>                                                 )<br>CARMEN D. PALMER,            )<br>                                                 )<br>                       Respondent.  )<br>_____) | Case No. 1:06-cv-491<br><br>Honorable Robert Holmes Bell<br><br>**REPORT AND RECOMMENDATION** |

This is a habeas corpus proceeding brought by a state prisoner pursuant to 28 U.S.C. § 2254.  Petitioner is serving a prison sentence of 14-to-40 years imposed by the Van Buren County Circuit Court on May 26, 1999, after petitioner pled guilty to armed robbery, MICH. COMP. LAWS § 750.529, pursuant to a plea agreement.  The *pro se* petition raises five due-process claims challenging his conviction, one due-process claim challenging his sentence under the state sentencing guidelines, and a claim of ineffective assistance of appellate counsel.

Presently pending before the court is respondent's motion for summary judgment. In her motion, respondent asserts that this habeas corpus action, filed on July 14, 2006, is barred by the one-year statute of limitations established in 28 U.S.C. § 2244(d).  Petitioner has responded to the motion, asserting that the ineffectiveness of his appellate counsel was either a state-created impediment within the meaning of section 2244(d)(1)(B) or served to equitably toll the running of the statute.

Chief Judge Robert Holmes Bell has referred this matter to me for issuance of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Rule 10 of the Rules Governing Section 2254 Proceedings in the District Courts. After review of the state-court record, I find that the habeas corpus petition is clearly time-barred and that petitioner has not asserted colorable grounds for avoiding the bar of the statute of limitations. I therefore recommend that the petition be dismissed as untimely.

**Proposed Findings of Fact**

The facts set forth below are established by the state-court record. Although petitioner has raised numerous factual claims, most are irrelevant to the question of the statute of limitations. In the rare case of disagreement between the parties concerning a material fact, I have resolved all factual issues in favor of petitioner for purposes of the pending summary judgment motion.

The state-court prosecution arose from a home invasion that occurred on January 24, 1999. Petitioner and two co-defendants were charged with armed robbery, MICH. COMP. LAWS § 750.529, possession of a firearm during the commission of a felony, MICH. COMP. LAWS § 750.227b, and conspiracy to commit armed robbery, MICH. COMP. LAWS § 750.157(a). The co-defendants were also charged with home invasion and first-degree criminal sexual conduct arising from their rape of a female occupant of the home. A preliminary examination was conducted on February 23, 1999, at which the magistrate found probable cause to bind petitioner over on the three felony charges against him. (*See* Preliminary Examination Transcript, docket # 17).

At the final pretrial conference, petitioner was offered a plea bargain, pursuant to which he would plead guilty to armed robbery, in exchange for dismissal of the other two felony counts and dismissal of the supplemental information charging petitioner with being an habitual offender, fourth-felony offense. MICH. COMP. LAWS § 769.12. (Conviction on the habitual offender charge would have exposed petitioner to a potential life sentence.)  Furthermore, the prosecutor offered petitioner a sentence cap of 7-to-20 years' imprisonment in exchange for his agreement to testify against his co-defendant, Troy Charles Leversee.

On April 30, 1999, petitioner and counsel appeared before Judge William C. Buhl for purposes of tendering a guilty plea pursuant to this agreement. (*See* Plea Transcript (PT), docket # 18).  At the outset of the proceeding, the assistant prosecutor placed the provisions of the foregoing plea agreement on the record.  (PT 4-6).  Defense counsel agreed with this recitation, clarifying that any sentence received in this case must by statute run consecutively to petitioner's preexisting sentence, for which he was on parole at the time of the home invasion.  (PT 6).  Petitioner affirmed that he understood the plea agreement and that it was the complete agreement in the case.  (PT 6-7). The court then conducted a careful plea colloquy to establish the knowing and voluntary nature of the plea.  Petitioner affirmed under oath that his plea was not induced by any promise, threat, or coercion.  (PT 8-9).  Petitioner testified that he and his friends got a gun and planned to break into a house "to get $300,000.00" of which petitioner would receive $100,000.00.  (PT 11).  Petitioner's role in the offense was to drop off the co-defendants and then pick them up after they had committed the crime.  (*Id.*).  Petitioner delivered the co-defendants to the house, which they assumed was a drug house, but ten minutes later the co-defendants exited the house with no money.  (PT 12).  The court accepted petitioner's guilty plea, remarking that the prosecutor was being "extremely generous" in

agreeing to a minimum sentence of seven years, but acknowledging that leniency might be warranted by petitioner's limited role in the offense and his cooperation. (PT 13-14).

When the time came for petitioner to testify at Leversee's trial, he refused to do so. The court offered to set aside the guilty plea, but petitioner declined the offer. Petitioner did eventually move to withdraw his plea, and the court noticed the motion for May 21, 1999. (*See* Motion Hearing (MH), docket # 19). At the outset of the motion hearing, defense counsel informed the court that petitioner had instructed him to abandon the motion to withdraw his plea and to proceed with sentencing. Counsel had explained to petitioner that the previous sentence agreement would not be in place, because he had broken his promise to testify against Leversee, "but he [petitioner] says he understands that." (MH 2). The prosecutor confirmed that the sentence recommendation was now off the table because of petitioner's breach of the agreement, but that the prosecutor would abide by his promise to dismiss the other charges. The prosecutor went on to indicate, however, that he would not object if the court should decide to depart below the guidelines. (MH 5). The court agreed that there would be some argument in favor of a departure, since petitioner did not enter the premises and had no role in the rape of the homeowner. (MH 6).

Petitioner appeared before the court on May 24, 1999, for sentencing. At the conclusion of the sentencing hearing, the court announced that it would impose a sentence of 14-to-40 years, which represented an 8-1/2 year departure downward departure from the minimum guideline sentence of 22-1/2 years. (*See* Sentencing Transcript (ST) docket # 20). On May 26, 1999, the court entered a judgment of criminal conviction. Petitioner requested appointment of counsel

for purposes of seeking discretionary review of his conviction and sentence.[1] On May 27, 1999, the court appointed attorney Andrew J. Marks to represent petitioner on appeal. The one-year deadline under Michigan law for filing an application for leave to appeal expired on May 26, 2000. *See* MICH. CT. R. 7.205(f)(3). It is undisputed that petitioner's appointed attorney failed to file an application for leave to appeal within the time allowed by law. Petitioner began corresponding with the Michigan Assigned Appellate Counsel System, the office responsible for appointing appellate attorneys, to complain of his counsel's inaction. The first evidence of such communication was a letter dated July 10, 2000, approximately two months after the time for seeking a discretionary appeal had expired. In December 2000, petitioner wrote the trial judge to request appointment of new appellate counsel and for "reinstatement" of his right to appeal. By letter dated December 7, 2000, Judge Buhl responded to petitioner, informing him that his letter was unsuitable for filing.

On February 26, 2001, the trial court appointed Patrick K. Ehlmann as substitute appellate counsel. Mr. Ehlmann informed petitioner that the time for him to seek a discretionary appeal had expired and that "the only proceeding that he would be able to file was a motion for relief from judgment in the trial court pursuant to MCR 6.500." (Petitioner's Brief, docket # 26, ¶ 4). It is undisputed that petitioner refused to accept Mr. Ehlmann's advice and insisted that Ehlmann pursue a discretionary appeal, even though the time to do so had expired. "Petitioner argued with new appellate counsel and wrote the trial court and informed the judge of new appellate counsel's ineffectiveness." (*Id.*). Petitioner filed a *pro se* motion to withdraw his plea, for evidentiary hearing, and for appointment of a third appellate attorney. By order entered February 13, 2002 (Attachment

---

[1] Michigan law does not allow an appeal of right from convictions based upon a plea of guilty, but allows discretionary review by leave to appeal. *See* MICH. CONST. art. 1, § 20; MICH. COMP. LAWS § 770.3(1)(e).

I to Memorandum in Support of Petition, docket # 2), the court denied petitioner's *pro se* motion. The court found that petitioner's motion for evidentiary hearing was frivolous in light of petitioner's voluntary guilty plea and the advice given to him at the time he chose to file his motion to withdraw plea. (*Id.* at 3). The court denied all motions, including the request for substitute counsel, making it clear that Mr. Ehlmann would be relieved of the obligation to file a timely request to withdraw. (*Id.*). On October 7, 2001, Mr. Ehlmann wrote petitioner a letter (Exhibit L to Memorandum in Support of Petition) informing him that he would seek to terminate his appointment. The letter again counseled petitioner that his only avenue for relief was a motion under Michigan Court Rule 6.500. He also advised petitioner, once again, that withdrawal of his guilty plea could ultimately expose him to a "much longer sentence."

On February 26, 2002, petitioner filed a *pro se* application for leave to appeal to the Michigan Court of Appeals. (*See* State Court of Appeals Record in case no. 239751, docket # 21). On March 21, 2002, the Chief Judge of the Court of Appeals entered an order dismissing the appeal for lack of jurisdiction, because of petitioner's failure to seek leave to appeal within one year of sentencing, as required by Mich. Ct. R. 7.205(F)(3). The order was entered without prejudice to petitioner's ability to seek relief from judgment pursuant to Mich. Ct. R. 6.500. The order further advised petitioner that such a motion is "his only opportunity to challenge his conviction and sentence."

Rather than filing a motion for relief from judgment, as advised by both appointed counsel and the Chief Judge of the Court of Appeals, petitioner returned to the trial court and filed a "letter/motion/request" asking for appointment of new appellate counsel and an evidentiary hearing. By order entered September 24, 2002, Judge Buhl denied the motion. The court observed

that there were no proceedings then pending entitling petitioner to court-appointed counsel. The court reviewed the transcript of the plea hearing, making findings concerning the voluntariness of the plea. On this basis, petitioner's motion for an evidentiary hearing concerning the validity of the plea was denied. (*See* Order, Ex. K to Memorandum in Support of Petition).

After dismissal of his appeal, petitioner continued to write letters to the trial court, demanding appointment of new appellate counsel. All of petitioner's requests for appellate counsel were denied, as the time for appeal had long expired. Finally, on May 4, 2005, petitioner filed a *pro per* motion for relief from judgment pursuant to Mich. Ct. R. 6.500. The motion essentially raised the seven grounds for relief alleged in the habeas corpus petition. By order entered June 2, 2005, Judge Buhl summarily denied relief. The court set forth the procedural history of the case, including the plea agreement and petitioner's violation thereof by his refusal to testify at Leversee's trial. The court also found as a fact that petitioner abandoned his request to withdraw his guilty plea, at which time it was "clearly explained" to petitioner that the sentencing recommendation was no longer part of the deal. The court again found that petitioner had no basis to set aside his plea and denied relief. (*See* Order of 6/2/05, found in Court of Appeals Record, docket # 23). Petitioner filed an application for leave to appeal to the Michigan Court of Appeals, which denied relief "for failure to meet the burden of establishing entitlement to relief under MCR 6.508(D)." (Order, found in Court of Appeals case no. 263355, docket # 23). Petitioner sought leave to appeal to the Michigan Supreme Court, which denied leave to appeal by standard order entered June 26, 2006. (*See* Supreme Court Record, case no. 130485, docket # 24). Petitioner filed the present habeas corpus action on July 14, 2006.

**Discussion**

Petitioner's application is barred by the one-year statute of limitations provided in 28 U.S.C. § 2244(d)(1), which became effective on April 24, 1996, as part of the Antiterrorism and Effective Death Penalty Act, PUB. L. NO. 104-132, 110 STAT. 1214 ("AEDPA"). The one-year statute of limitations provided in section 2244(d)(1) is new, as there previously was no defined period of limitation for habeas actions.[2] Section 2244(d)(1) provides:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of–
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). The running of the statute of limitations is tolled when "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2); *see also Duncan v. Walker*, 533 U.S. 167 (2001) (limiting the tolling provision to only state, and not federal, processes); *Artuz v. Bennett*, 531 U.S. 4, 8 (2000) (defining "properly filed").

---

[2]Previously, the only time limit was provided in Rule 9 of the Rules Governing § 2254 Cases, which allows dismissal of a petition only under circumstances where the state has been prejudiced by the delay in filing.

### A.       Analysis Under Section 2244(d)(1)(A)

In most cases, section 2244(d)(1)(A) provides the period of limitation. Under section 2244(d)(1)(A), the one-year limitation period runs from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." The criminal judgment in this case, entered on May 26, 1994, became final on May 26, 2000, the expiration of the twelve-month period for seeking leave to appeal under Mich. Ct. R. 7.205(F)(3). As the state Court of Appeals later held, after the expiration of this twelve-month period, the conviction was no longer reviewable on direct appeal. (*See* Order of Michigan Court of Appeals dated 3/21/02, docket # 21). Thereafter, the state Court of Appeals did not have jurisdiction to entertain a direct appeal by leave granted. *See* MICH. CT. R. 7.205(F)(3) ("Except as provided in subsection (4)(F), leave to appeal may not be granted if an application for leave to appeal is filed more than 12 months after the later of . . . entry of a final judgment."). Furthermore, the state Supreme Court had no jurisdiction to grant leave to appeal, as its appellate authority extends only to review of cases pending or decided in the Court of Appeals, *see* MICH. CT. R. 7.301(A)(2), and no appeal was filed in the state Court of Appeals before the expiration of the one-year time limit. Nor is petitioner entitled to the benefit of the ninety-day period for seeking *certiorari* in the United States Supreme Court. Where, as here, a criminal defendant does not pursue a direct appeal, there is no judgment by an appellate court from which he can seek review in the United States Supreme Court. *See United States v. Cottage*, 307 F.3d 494, 499 (6th Cir. 2002) (section 2255 case). The *Cottage* court observed that the jurisdiction of the United States Supreme Court extends only to final judgments of the highest court of a state in which a decision could be had. *Id.*; *see* 28 U.S.C. § 1257(a). Under *Cottage*, a judgment becomes final for purposes of the AEDPA statute of limitations

on the last day for filing that level of state appeal on which petitioner defaulted. *Cottage*, 307 F.3d at 499; *accord Roberts v. Cockrell*, 319 F.3d 690, 694-95 (5th Cir. 2003) (if defendant does not appeal to state court of last resort, the conviction becomes final for AEDPA purposes when the time for seeking further direct review in the state court expired, without regard to the ninety days for seeking certiorari). Consequently, under the clear language of section 2244(d)(1), petitioner's criminal judgment became final on May 26, 2000, on which date the time for seeking direct review in the state courts expired.

After the expiration of the one-year period for seeking leave to appeal under the Michigan Court Rules, petitioner's "exclusive means" for challenging his conviction was by motion for relief from judgment under Mich. Ct. R. 6.500. *See People v. Reed*, 499 N.W.2d 441, 443 n.1 (Mich. Ct. App. 1993), *aff'd*, 535 N.W.2d 496 (Mich. 1995); *accord People v. Caston*, 579 N.W.2d 368, 371 (Mich. Ct. App. 1998) ("[B]ecause defendant failed to pursue an appeal of right when he had the opportunity to do so, and because the time limitations for filing an application for leave to appeal have expired, defendant's convictions are reviewable only in accordance with subchapter 6.500 of the Michigan Court Rules. . . ."). Such a motion for state post-conviction relief, if timely, will toll the AEDPA statute of limitations during the period in which the state application is pending. *See* 28 U.S.C. § 2244(d)(2). An application for state post-conviction relief is "properly filed" when its delivery and acceptance are in compliance with the applicable laws and rules governing filings. *See Artuz v. Bennett*, 531 U.S. 4, 8 (2000). It remains "pending" until all state appellate remedies are concluded. *See Carey v. Saffold*, 536 U.S. 214, 219-20 (2002); *see also Lawrence v. Florida*, 127 S. Ct. 1079, 1083-85 (2007). The tolling effect of section 2254(d)(2), however, cannot serve to "revive" the limitations period; it can only serve to pause a clock that has not yet fully run. *See*

*Vroman v. Brigano*, 346 F.3d 598, 602 (6th Cir. 2003). In short, in order to toll the running of the statute under section 2254(d)(2), the state application for post-conviction relief must be filed before the one-year statutory period has elapsed.

In the present case, petitioner did not file his application for post-conviction relief under Mich. Ct. R. 6.500 until May 4, 2005, over six years after the entry of judgment and over five years after that judgment became final. Had petitioner acted seasonably by filing his application for post-conviction relief before May 26, 2001, the running of the statute would have been tolled pending disposition of the motion in the state trial and appellate courts. In the circumstances of this case, however, petitioner cannot take advantage of the tolling provision of section 2244(d)(2). His habeas corpus petition is therefore untimely.

**B.     Analysis Under Section 2244(d)(1)(B)**

Petitioner raises two alternative arguments in opposition to this conclusion. First, he asserts that the ineffective assistance of his first appointed appellate counsel, Andrew J. Marks, entitles him to rely on an alternative date from which the one-year limitations period began to run. Under section 2244(d)(1), the limitations period may run from

> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

if that date is later than the date upon which the judgment became final. Petitioner argues that he was prevented from filing his direct appeal in the state courts by the ineffective assistance of Mr. Marks and that this alleged ineffective assistance of appellate counsel should be deemed a state-

created impediment within the meaning of section 2244(d)(1)(B), thus delaying the accrual of the limitations period.

To be entitled to a delay in the accrual of the one-year limitations period under section 2244(d)(1)(B), a petitioner must show the existence of a state-created impediment and a causal link between that impediment and the delay in filing the habeas corpus action. *See Colwell v. Tanner*, 79 F. App'x 89-92 (6th Cir. 2003) ("Not only must the state impede the petitioner in some fashion, but also that obstruction must cause the untimely filing of the petition."). "'Section 2241(d)(1)(B) [therefore] requires a causal relationship between the unconstitutional state action and being prevented from filing the petition.'" *Winkfield v. Bagley*, 66 F. App'x 578, 583 (6th Cir. 2003) (quoting *Dunker v. Bissonnette*, 154 F. Supp. 2d 95, 105 (D. Mass. 2001)). Given these requirements, it should not be surprising to learn that ineffective assistance of counsel on appeal is "not the type of impediment envisioned in § 2244(d)(1)(B)." *Lawrence v. Florida*, 421 F.3d 1221, 1226 (11th Cir. 2005), *aff'd*, 127 S. Ct. 1079 (2007); *cf. Allen v. Yukins*, 366 F.3d 396, 401 (6th Cir. 2004) (allegation of ineffective assistance of counsel on direct appeal does not restart the running of the statute of limitations); *McClendon v. Sherman*, 329 F.3d 490, 494 (6th Cir. 2003) (same). This is because appellate counsel's ineffectiveness, although perhaps an impediment to the timely filing of a state appeal, has no causal relationship to the filing of an untimely habeas petition years later.

These principles are aptly demonstrated in the present case. I assume for purposes of analysis that petitioner's first appointed appellate counsel, Mr. Marks, was constitutionally ineffective for failing to file an application for leave to appeal before the expiration of the one-year

time limit.³  The effect of counsel's negligence was that petitioner forfeited his ability to seek discretionary review in the Michigan courts on direct appeal.  That time expired on May 26, 2000, leaving petitioner with only one avenue for relief:  a post-judgment motion under Rule 6.500. Petitioner learned that a post-judgment motion was his only appropriate remedy as early as February 2001, when his second appointed attorney, Patrick Ehlmann, informed him of this fact.  (*See* Petitioner's Brief, docket # 26, ¶ 4).  This advice was reinforced by the letter from the Michigan Appellate Assigned Counsel System, dated October 9th of the same year, in which petitioner was informed repeatedly that the time for a direct appeal had expired.  As if this were not enough, the Chief Judge of the Michigan Court of Appeals gave petitioner the same information by order entered March 21, 2002, which dismissed petitioner's belated appeal for lack of jurisdiction and informed him that a motion under Rule 6.500 was "his only opportunity to challenge his conviction and sentence."  (docket # 21).

        Petitioner's criminal conviction became final under section 2244(d)(1)(A) on May 26, 2000, the expiration of the twelve-month period for seeking leave to appeal under state law. Even assuming that petitioner is entitled to a later accrual date under section 2244(d)(1)(B) on account of the "impediment" caused by appellate counsel's ineffectiveness, that impediment was removed as soon as petitioner was informed that his appellate rights had expired and that a Rule 6.500 motion was his only avenue of relief.  This knowledge came as early as February 2001, when Mr. Ehlmann, by petitioner's own admission, informed him that the time for direct appeal had

---

³ The Michigan Appellate Assigned Counsel System conducted an investigation at petitioner's request and issued written findings that Mr. Marks had violated several professional standards in failing to file a timely application for leave to appeal and failing to inform petitioner of the status of the matter.  (*See* Letter dated 10/9/01, Appendix A to Petitioner's Brief, docket # 26).

expired and that the only proceeding available was a motion for relief from judgment under Rule 6.500. Petitioner's reaction to this accurate advice was to charge Mr. Ehlmann with incompetence and to request new counsel. Certainly, no later than March 21, 2002, when the state Court of Appeals dismissed petitioner's belated appeal for want of jurisdiction, petitioner was clearly on notice of the effect of his previous counsel's negligence and of his obligation to file a Rule 6.500 motion. Had petitioner done so immediately, he could have arguably tolled the running of the statute of limitations. Petitioner, however, delayed until May 4, 2005, in which to file a motion for relief from judgment.

In summary, even if one attempts to give petitioner the benefit of a later accrual date under section 2244(d)(1)(B) arising from appellate counsel's ineffectiveness, the later accrual date must begin to run no later than March 21, 2002, when the Chief Judge of the state Court of Appeals dismissed petitioner's belated appeal for lack of jurisdiction. After that date, Mr. Marks's alleged ineffectiveness presented no further "impediment" to petitioner's seeking post-conviction relief. Petitioner delayed an additional three years thereafter in filing his state motion for post-conviction relief. By that time, the one-year AEDPA limitations period had long expired and could not be revived by the filing of a late motion for state post-conviction relief. *See Winkfield*, 66 F. App'x at 581-83. Even assuming ineffective assistance of appellate counsel, petitioner has not and cannot bear his burden of showing a causal relationship between this appellate default and petitioner's six-year delay thereafter in filing his federal habeas corpus petition.

### B. Equitable Tolling

Petitioner argues in the alternative that the running of the one-year AEDPA statute of limitations should be deemed equitably tolled from May 26, 1999 (the date of judgment), until August 13, 2004 (when petitioner made his final request for "reinstatement of his original appeal."). (Brief, docket # 26, at 11-12). Petitioner's invocation of the doctrine of equitable tolling is utterly meritless on the facts of this case.

The one-year limitation period applicable to section 2254 is a statute of limitations subject to equitable tolling. *Allen v. Yukins*, 366 F.3d 396, 401 (6th Cir. 2004). A petitioner bears the burden of showing that he is entitled to equitable tolling. *Id.*; *see Jurado v. Burt*, 337 F.3d 638, 642 (6th Cir. 2003); *Griffin v. Rogers*, 308 F.3d 647, 653 (6th Cir. 2002). The Sixth Circuit has repeatedly cautioned that equitable tolling should be applied "sparingly" by this court. *See Solomon v. United States*, 467 F.3d 928, 933 (6th Cir. 2006); *Jurado*, 337 F.3d at 642; *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir. 2002); *Dunlap v. United States*, 250 F.3d 1001, 1008-09 (6th Cir. 2001). In *Pace v. DiGuglielmo*, 544 U.S. 408, 418-19 (2005), the Supreme Court held that a petitioner seeking equitable tolling of the habeas statute of limitations has the burden of establishing two elements: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Id.* at 418 (applying standard set forth in *Irwin v. Dep't of Veteran Affairs*, 498 U.S. 89, 96 (1990)); *accord Lawrence v. Florida*, 127 S. Ct. at 1085.

For the same reasons set forth in section B above, I find that petitioner cannot bear his burden of showing entitlement to equitable tolling, because he has not pursued his rights diligently nor has he been impeded by some extraordinary circumstance. Petitioner waited over three years to file a Rule 6.500 motion, which was his "exclusive" avenue for relief, after being repeatedly

advised by both his attorney and the state Court of Appeals of his obligation to do so. This can hardly be deemed diligence. Rather, petitioner persisted in efforts to "reinstate" his direct appeal, long after the time for doing so had expired and despite the state Court of Appeals dismissal of a late appeal for lack of jurisdiction. Indeed, in his submissions to this court, petitioner persists in his argument that the state courts should have somehow reinstated his direct appeal, even after they had lost jurisdiction to do so. This course of conduct cannot be deemed diligent; "obstinate" is a much more accurate description. Furthermore, petitioner can point to no extraordinary circumstance that impeded his ability to file a habeas corpus action. Assuming that petitioner's first appellate counsel was ineffective, this circumstance would only excuse petitioner's inaction until such time as he was advised of the correct procedure to follow. As noted in section B above, this advice came in the year 2001 or 2002. Thereafter, petitioner faced no impediment whatsoever in his ability to exhaust his claims in the state courts and then to file a timely habeas petition. He did neither. The Sixth Circuit has held that an attorney's lack of diligence in preserving a petitioner's habeas corpus rights is inadequate to create the extraordinary circumstance required for equitable tolling. *See Jurado*, 337 F.3d at 644; *accord Smaldone v. Sankowski*, 273 F.3d 133, 138 (2d Cir. 2001) (collecting cases). *A fortiori*, attorney error occurring six years before the filing of a habeas corpus petition, which in no way affected the petition's timeliness, cannot be deemed grounds for equitable tolling.

### Recommended Disposition

I conclude that the habeas corpus petition is untimely under the one-year statute of limitations created by AEDPA for habeas corpus filings, and that petitioner has not established any

grounds for equitable tolling.  I therefore recommend that the motion for summary judgment (docket # 14) be granted and that the petition be dismissed with prejudice as untimely.


Dated:  August 16, 2007              /s/  Joseph G. Scoville
                                     United States Magistrate Judge


### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within ten days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Neuman v. Rivers*, 125 F.3d 315, 322-23 (6th Cir.), *cert. denied*, 522 U.S. 1030 (1997); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).